FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

IAN B.,[1]

                              Plaintiff,

            v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                              Defendant.

No.    4:24-cv-3031-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR MORE
PROCEEDINGS**

Due to vascular necrosis in the right hip, depression, anxiety, and manic episodes, Plaintiff Ian B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Because the ALJ failed to evaluate the required supportability factor for several of the medical opinions, the ALJ erred. This matter is remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

1

# I.   Background

2

Plaintiff applied for benefits under Title 2, claiming disability beginning

3

June 26, 2020, at the age of 46, based on the previously mentioned conditions.[2]

4

After the agency denied benefits, ALJ Cecilia LaCara held a telephone hearing in

5

December 2022, at which Plaintiff and a vocational expert testified.[3]

6

Plaintiff testified that his mental health had been getting progressively

7

worse since 2014, with his manic and depressive "cycling" becoming quicker during

8

the last two years.[4] Plaintiff stated that he cycles at least four times a year with

9

about three days a week of mania followed by 2–4 weeks of severe depression.[5]

10

During his more severe periods of anxiety and mania, he will be awake for more

11

than 20 hours a day and can go into a full psychosis where he will not remember a

12

day or two.[6] When he is in the depressed part of his cycles, he has no motivation,

13

which causes difficulty getting out of bed, eating, or showering, and thus he sleeps

14

most of the time.[7] The prescribed medications help damper the ends of his cycles,

15

16

_____

17

[2] AR 213–25.

18

[3] AR 39–73, 116–25.

19

[4] AR 45.

20

[5] AR 45.

21

[6] AR 46.

22

[7] AR 50–51.

23

but they do not stop his cycles.[8] He experiences anxiety when he goes to the store and so he tries not to go to the store alone.[9] In 2020, he started attending college part-time, with hopes of going into the nursing field; at college, he is allowed extra time to take examinations as an accommodation for his mental health.[10] He takes about two classes at a time and does not attend classes during the summer.[11]

As to his right hip, Plaintiff testified that it causes pain when it pops in and out, and that it also locks up.[12] His pain level fluctuates between a 3–6 throughout the week, and the pain is relieved only when he lays down, which he does about 4–5 times a day.[13] He stated that he has been unable to have the required hip surgery because he had just recently stopped smoking, which was a medical prerequisite for surgery.[14]

---

[8] AR 48–49.

[9] AR 50.

[10] AR 48.

[11] AR 47.

[12] AR 53.

[13] AR 53–54.

[14] AR 53.

The ALJ found that Plaintiff failed to establish disability and denied benefits.[15] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[16] The ALJ considered the lay statements from Plaintiff's spouse and friend. As to the medical opinions, the ALJ found:

- the reviewing opinions of Lisa Hacker, MD; Howard Platter, MD; and Myron Watkins, MD, persuasive.

- The reviewing opinion of W. Miller Logan, MD, moderately persuasive.

- The treating opinions of Melissa Helgeson, ARNP; Regina Lancaster, DO; and Ruth Olmer, PsyD, not persuasive.[17]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2024.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2020, the alleged onset date.

---

[15] AR 14–38. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[16] AR 23–27.

[17] AR 27–30. One of the opinions the ALJ attributed to Dr. Lancaster was completed by ARNP S. French. AR 29, 543–46.

- Step two: Plaintiff had the following medically determinable severe impairments: avascular necrosis in the right hip, anxiety disorder, and depressive disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform sedentary work except:

    he can stand and/or walk up to 2 hours; he can sit up to 6 hours; he can occasionally climb ramps or stairs; he can never climb ladders, ropes or scaffolds; he can frequently balance; he can occasionally stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to hazards and non-weather related extreme cold; and he would be off task an additional 5% of the day not including lunch and breaks given to full time employees.

- Step four: Plaintiff was capable of performing past relevant work as a sales agent, insurance.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as agricultural sorter, document preparer, demonstrative final assembler, and cashier II.[18]

---

[18] AR 17–33.

1    Plaintiff timely requested review of the ALJ's decision by the Appeals

2    Council and now this Court.[19]

3                    **II.    Standard of Review**

4    The ALJ's decision is reversed "only if it is not supported by substantial

5    evidence or is based on legal error" and such error impacted the nondisability

6    determination.[20] Substantial evidence is "more than a mere scintilla but less than

7    a preponderance; it is such relevant evidence as a reasonable mind might accept as

8    adequate to support a conclusion."[21]

9    

10    [19] AR 1–6.

11    [20] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

12    *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

13    *grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

14    ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

15    nondisability determination").

16    [21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

17    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

18    court "must consider the entire record as a whole, weighing both the evidence that

19    supports and the evidence that detracts from the Commissioner's conclusion," not

20    simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

21    143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

22    not indicate that such evidence was not considered[.]").

23

1

### III.    Analysis

2

Plaintiff argues the ALJ erred when evaluating the medical opinions, his

3

symptom testimony, and his past relevant work. The Commissioner argues the

4

ALJ's nondisability finding is supported by substantial evidence. As is explained

5

below, the ALJ consequentially erred by failing to explain how she considered the

6

required supportability factor for each of the medical opinions.

7

**A.    Medical Opinions: Plaintiff establishes consequential error.**

8

Plaintiff argues the ALJ failed to properly evaluate several of the medical

9

opinions. The Court agrees.

10

1.    Standard

11

The ALJ must consider and articulate how persuasive she found each

12

medical opinion and prior administrative medical finding, including whether the

13

medical opinion or finding was consistent with and supported by the record.[22] The

14

factors for evaluating the persuasiveness of medical opinions and prior

15

administrative medical findings include, but are not limited to, supportability,

16

consistency, relationship with the claimant, and specialization.[23] Supportability

17

and consistency are the most important factors, and the ALJ must explain how she

18

considered these two factors:

19

> The factors of supportability . . . and consistency . . . are the most
> important factors we consider when we determine how persuasive we

20

21

————————————————

[22] 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

22

[23] 20 C.F.R. § 404.1520c(c)(1)–(5).

23

find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[24]

The regulations define these two required factors:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[25]

The ALJ may, but is not required to, explain how the other listed factors were considered.[26] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[27]

---

[24] 20 C.F.R. § 404.1520c(b)(2).

[25] *Id.* § 404.1520c(c)(1)–(2).

[26] *Id.* § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* § 404.1520c(b)(3).

[27] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

2.    <u>Dr. Hacker</u>

In February 2021, at the request of the Commissioner, Dr. Hacker reviewed the medical record.[28] Based on her record review, Dr. Hacker found that Plaintiff suffered from depression, bipolar, and related disorders; did not meet a listing; had no limitations interacting with others, adapting or managing himself, or understanding, remembering, or applying information; and had moderate impairments with concentrating, persisting, or maintaining pace. Dr. Hacker wrote:

- ". . . pain and depression reduce his ability to persist, but he is able to persist the majority of the time," and

- "[r]ecent treatment notes indicate improvement. He is making plans for attending school. Mood has been stable. MSEs normal. ADLs form indicates does well except when manic. Evidence supports he is capable as per MRFC ratings."[29]

As to Dr. Hacker's opinion, the ALJ stated:

---

[28] AR 74–91.

[29] AR 87–88.

1

2

3

4

5

> I find the opinion of Dr. Hacker persuasive. While Dr. Hacker did not have an opportunity to examine the claimant or to review the updated record, her opinion that the claimant will sometimes have reduced persistence but otherwise have no further mental limitations is generally consistent with the longitudinal record to include, for example, the claimant's often normal presentation with intact cognition as evidenced by mental status findings showing intact attention and concentration, intact memory, and fair insight and judgment; his ability to interact appropriately with providers, who often described him as cooperative and pleasant; his often appropriate or otherwise unremarkable hygiene and grooming; and his ability to engage in activities such as nursing school suggest greater functional capacity than alleged (see e.g. 1F3, 14; 2F11, 20, 17; 3F5; 5F7, 22; 9F2, 5; 10F4; 13F25, 29, 126; finding #5).

6

7

8

9

10

Plaintiff argues this analysis fails to address the required supportability factor. In response, the Commissioner argues that 1) the ALJ did consider the supportability factor; and 2) regardless, the ALJ's decision to find Dr. Hacker's opinion persuasive can be affirmed based on either supportability or consistency and, here, the ALJ's consistency finding is supported by substantial evidence.[30]

11

12

13

14

15

16

17

Addressing the Commissioner's last argument, this argument overlooks that the statute requires the ALJ to *consider and explain* the supportability and consistency of each medical opinion.[31] Therefore, although a court may affirm an ALJ's evaluation of medical opinion on either the ALJ's supportability or consistency findings, the ALJ must explain both the supportability and consistency factors. The regulations are clear that a proper and thorough analysis of one of the two factors is not enough to overcome the failure to address the second factor.

18

19

20

Second, although the ALJ did not expressly make a "supportability" finding as to Dr. Hacker's opinion, the Commissioner argues that the ALJ satisfied the

21

22

23

---

[30] ECF No. 10 at 10–11.

[31] 20 C.F.R. § 404.1520c(b)(2).

supportability factor by mentioning that Dr. Hacker did not examine Plaintiff and did not review records after February 2021. Plaintiff in turn argues that these comments by the ALJ go to the "relationship" and "other" factors under 20 C.F.R. § 404.1520c(c)(3), (5) and that the ALJ failed to explain a supportability finding.

The supportability factor requires the ALJ to consider whether the medical source presented "more relevant . . . objective medical evidence and supporting explanations."[32] Here, other than recognizing that Dr. Hacker's opinion was not supported by an examination or any post-February 2021 record review, the ALJ did not explain how she evaluated this factor. For instance, the ALJ did not discuss how the limited comments by Dr. Hacker supported her opined limitations, which were based on a review of records for only the first 7 months of the relevant period, i.e., June 1, 2020 (alleged onset date), to January 28, 2021. In comparison, each of the other mental-health sources, other than Nurse French, reviewed subsequent medical records or treated Plaintiff during the latter, lengthier portion of the relevant period: Dr. Logan issued his opinion in January 2022, Nurse Helgeson issued her opinion in May 2022, and Dr. Lancaster and Dr. Olmer issued their opinions in November 2022. After reviewing more of the longitudinal treatment record, each of these other sources found more non-exertional limitations than Dr. Hacker.

---

[32] 20 C.F.R. § 404.1520c(c)(1).

1    Likewise, contrary to the Commissioner's argument otherwise,[33] the ALJ did

2  not explain how she found any of the other medical opinions supported or not

3  supported by that source's relevant objective medical evidence and/or supporting

4  explanation. Therefore, the Court is unable to use the ALJ's "supportability"

5  evaluation of a different source's medical opinion as a comparison point from which

6  to assess the ALJ's supportability evaluation of Dr. Hacker's opinion. For instance,

7  the Commissioner argues that the ALJ's analysis for the Central Washington

8  Family Medicine providers, including Nurse Helgeson, Dr. Lancaster, and

9  Dr. Olmer did address the supportability factor. But again, the Court concludes

10  otherwise. The ALJ's analysis for each of these providers was largely similar. For

11  Nurse Helgeson, the ALJ wrote that her "opinion that the claimant would have

12  marked limitations and be unable to complete a normal workday and workweek is

13  out of proportion to the longitudinal record to include, for example, the claimant's

14  often normal presentation with intact cognition as evidenced by [normal] mental

15  status findings . . . ."[34] This finding, given the language used by the ALJ, along

16  with the citation to treatment records that were not solely created by Nurse

17  Helgeson, aligns with the consistency factor, not the supportability factor.[35]

18  _____

19  [33] ECF No. 10 at 13.

20  [34] AR 29.

21  [35] *See, e.g.*, AR 29 (citing 2F40, 52, 72, 91; 10F4, 31, 62 (created by Nurse French);

22  2F100 (created by Andrea Schmidt); 3F3, 13F123 (created by Dr. Olmer); 3F11, 20,

23

DISPOSITIVE ORDER - 12

Moreover, the five cited records authored by Nurse Helgeson reflect observed sadness, depression, fast speech, energetic affect, and sloppy appearance, and the ALJ did not discuss whether these abnormal mental-health observations did or did not support Nurse Helgeson's opinion. Therefore, the Court is unable to use the ALJ's evaluation of a different source's medical opinion as a comparison point from which to assess the ALJ's supportability evaluation for Dr. Hacker's opinion.

Based on this record, the ALJ's failure to explain how Dr. Hacker's opinion was supported by more relevant objective medical evidence and supporting explanation constitutes error.

3.    Other Medical Opinions

Plaintiff also argues the ALJ erred in considering the opinions of Dr. Logan, Dr. Platter, Dr. Watkins, ARNP French, ARNP Helgeson, and Dr. Lancaster. The Court agrees the ALJ erroneously failed to consider the required supportability factor. Given the failure to consider the required supportability factor, the ALJ should reevaluate all medical opinions on remand. Moreover, on remand, the ALJ is to acknowledge that the form dated June 25, 2020, was completed by treating ARNP S. French, not Dr. Lancaster.

5F9, 14 (created by Dr. Lancaster); 9F2 (created by Dr. Greene); 13F39, 50, 67, 82, 89 (created by Nurse Helgeson).

**B.    Symptom Reports: To be reevaluated on remand.**

Plaintiff argues that the reasons given by the ALJ to discount his testimony about his mental and physical symptoms are not clear and convincing reasons supported by substantial evidence. Because this matter is being remanded due to the ALJ's failure to consider both of the required factors—consistency and supportability—when evaluating the medical opinions, the Court does not address each of Plaintiff's claims of error as to his symptom testimony. However, to aid the ALJ's evaluation on remand, the Court addresses two of the arguments Plaintiff presented.

First, the ALJ discounted Plaintiff's symptom reports because he delayed surgery on his right hip, which was inconsistent with the alleged severe hip and pain symptoms.[36] The record reflects that Plaintiff delayed surgery for a variety of reasons, including that he needed to cease smoking first, the Covid-19 pandemic affected surgery schedules, Plaintiff's wife's health and need for surgery impacted the family's decision as to when Plaintiff would have surgery, and Plaintiff did not want surgery to impact his ability to snowboard. While delaying surgery until after snowboarding season may not constitute good cause to delay surgery, the ALJ failed to meaningfully consider whether the other reasons constituted good cause to delay hip surgery.

---

[36] AR 24.

DISPOSITIVE ORDER - 14

Second, the ALJ found that Plaintiff's activities suggested greater mental-health functioning than he alleged, including that Plaintiff went skiing/snowboarding, walking, hiking, and to school with the aim of becoming a nurse.[37] On remand, the ALJ is to consider that Plaintiff reported to treating providers that when he is manic he has excess energy and uses physical exercise to release this energy.[38] Moreover, the notes in the treatment records as to Plaintiff's statements to his providers about attending school appear to be consistent with his testimony that he was attending school part-time, some (or all) of his classes are online, and that he receives testing accommodation.[39] On remand, the ALJ must clearly explain how these activities are inconsistent with Plaintiff's reported symptoms or reflect the ability to perform and sustain fulltime work. [40]

**C.    Step Four: Reevaluation is necessary on remand.**

Plaintiff argues the ALJ erred when finding that he had past relevant work as an insurance sales agent because he did not work this job long enough to meet the requirements and that this job is not consistent with the sedentary RFC. In

---

[37] AR 27.

[38] *See, e.g.*, AR 773 ("He continues to snowboard which also helps relieve his anxiety"); AR 742 ("Mood is good, he exercises a lot, moves a lot to drain energy").

[39] *See, e.g.*, AR 47, 505, 683, 700, 715.

[40] *See Molina*, 674 F.3d at 1112-13.

response, the Commissioner argues that Plaintiff satisfies the SVP[41] requirement through his sales-agent and non-sales-agent experiences and that the ALJ reasonably determined Plaintiff could return to his past relevant work (PRW).

At step four of the sequential evaluation process, the claimant bears the burden of proving that he can no longer perform PRW.[42] PRW is "work that [one has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [one] to learn to do it."[43]

The ALJ found that Plaintiff had PRW as an insurance sales agent (DOT 250.257-010), a job with an SVP[44] of 6, which means one must work at least 1 year and up to and including 2 years to meet the SVP requirements.[45] Plaintiff maintains that, although he was at his prior insurance agent job from April 2019 to June 2020, he was away from the job for 3 months during that period due to family obligations and thus this job does not qualify as PRW, as he was not at the job for at least 1 year. In addition, Plaintiff argues that the job of insurance sales agent is

---

[41] *See* https://secure.ssa.gov/poms.nsf/lnx/0425001001; https://occupationalinfo.org/appendxc_1.html#II.

[42] *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

[43] 20 C.F.R. § 404.1560(b)(1).

[44] Specific Vocational Preparation (SVP).

[45] *See* https://secure.ssa.gov/poms.nsf/lnx/0425001001; https://occupationalinfo.org/appendxc_1.html#II.

a light-work job, not a sedentary job. On remand, the ALJ is to reevaluate whether the insurance sales agent qualifies as PRW, i.e., whether Plaintiff worked for at least one year in that job and whether it is consistent with the to-be-assessed RFC, obtaining additional vocational expert testimony as necessary.

## IV.  Conclusion

Plaintiff establishes the ALJ erred and that further proceedings on remand are necessary. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of August 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge